Paul B. Mengedoth, Esq. (018507)
**MENGEDOTH LAW PLLC**
20909 N. 90th Place, Suite 211
Scottsdale, AZ  85255
Tel: (480) 778-9100
Fax: (480) 778-9101
E-mail: paul@mengedothlaw.com

James A. Francis, Esq.
John Soumilas, Esq.
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA  19110
Tel: (215) 735-8600
Fax: (215) 940-8000
E-mail: jfrancis@consumerlawfirm.com
E-mail: jsoumilas@consumerlawfirm.com

*Counsel for Plaintiff Anam Abbas*

*and all other similarly situated individuals.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ANAM ABBAS,<br>individually and on behalf of a class<br>of similarly situated persons,<br><br>Plaintiff,<br><br>vs.<br><br>EARLY WARNING SERVICES, LLC,<br><br>Defendant. | No. 2:15-cv-01976-DLR<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND**<br>**UNCONTESTED MOTION FOR**<br>**PRELIMINARY APPROVAL OF**<br>**CLASS ACTION SETTLEMENT AND**<br>**MEMORANDUM OF POINTS**<br>**AND AUTHORITIES**<br>**IN SUPPORT THEREOF** |

i

Plaintiff, Anam Abbas ("Plaintiff" or "Ms. Abbas") respectfully submits this Notice of Motion and Uncontested Motion For Preliminary Approval of Class Action Settlement and Memorandum of Points and Authorities in Support Thereof (the "Motion").

PLEASE TAKE NOTICE that on a date to be determined by the Court, in the United States District Court for the District of Arizona, Plaintiff hereby moves the Court for an order preliminarily approving the settlement reached between the parties in this matter. This Uncontested Motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities, all exhibits attached thereto, all records and papers on file in this action, and any argument offered at a hearing on this Motion.

Dated: September 16, 2016.                    FRANCIS & MAILMAN, P.C.

By:      /s/ John Soumilas
         James A. Francis, Esq. (pro hac vice)
         John Soumilas, Esq. (pro hac vice)
         Land Title Building, 19th Floor
         100 South Broad Street
         Philadelphia, PA 19110
         Tel: (215) 735-8600
         Fax: (215) 940-8000
         E-mail: jfrancis@consumerlawfirm.com
         E-mail: jsoumilas@consumerlawfirm.com

         MENGEDOTH LAW PLLC
         Paul B. Mengedoth, Esq. (018507)
         20909 N. 90th Place, Suite 211
         Scottsdale, AZ 85255
         Tel: (480) 778-9100
         Fax: (480) 778-9101
         E-mail: paul@mengedothlaw.com

         *Counsel for Plaintiff Anam Abbas*
         *and all similarly situated individuals.*

ii

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ..................................................................... 1

II. PROCEDURAL HISTORY ....................................................... 2

III. THE PROPOSED SETTLEMENT ........................................... 3

 A. The Settlement Class ...................................................... 3

 B. The Consideration Provided To The Class Under
  The Settlement Agreement ............................................. 4

 C. The Release ..................................................................... 6

 D. The Required Class Action Fairness Act Notice ............... 6

 E. Notice And Settlement Administration .......................... 6

 F. Actual Damages Claims Process ...................................... 7

 G. Attorneys' Fees And Expenses; Service Award ................ 9

 H. *Cy Pres* Award ............................................................... 9

 I. Exclusions And Objections ............................................. 9

IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ....... 11

 A. The Settlement Approval Process ................................. 11

 B. Preliminary Approval .................................................... 12

  1. The Settlement Negotiations Were At Arm's Length ................ 13

  2. Plaintiff's Counsel Had Appropriate Discovery To Make
   An Informed Judgment On The Merits Of The Claims ............. 14

  3. Counsel For Both Parties, Who Are Highly Experienced
   In Class Action Procedure And The Claims At Issue
   In The Case, Believe The Settlement Is Fair, Reasonable
   And Adequate .......................................................... 14

  4. The Risks Of Litigation Support Approval ....................... 14

V.   CLASS   CERTIFICATION   FOR   SETTLEMENT   PURPOSES   IS
     APPROPRIATE.................................................................................16

     A.   The Class Satisfies The Numerosity Requirement............................17

     B.   The Class Satisfies The Commonality Requirement.........................17

     C.   The Plaintiff Meets The Typicality Requirement..............................18

     D.   The Plaintiff Satisfies The Adequacy Requirement..........................19

     E.   The Class Satisfies The Criteria Of Rule 23(b)................................20

          1.   Common Questions Predominate.............................................20

          2.   A Class Action Is The Superior Method For
               The Fair And Efficient Adjudication Of
               This Controversy.....................................................................21

          3.   The Individual Class Members' Interest
               In Controlling The Litigation..................................................21

          4.   Extent And Nature Of Litigation Already
               Commenced By Class Members...............................................22

          5.   The Desirability Of Concentrating The
               Litigation In A Particular Forum............................................22

          6.   This Case Is Manageable As A Class Action...........................22

VI.  THE PROPOSED CLASS NOTICE IS
     CONSTITUTIONALLY SOUND...........................................................23

VII. PROPOSED SCHEDULE.........................................................................23

XIII. CONCLUSION.......................................................................................24

iv

1

## **<u>TABLE OF AUTHORITIES</u>**

2

### **<u>CASES</u>**

*Alberto v. GMRI, Inc.,*
    252 F.R.D. 652 (E.D. Cal. 2008) ......................................................... 12

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................... 25

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds,*
    133 S. Ct. 1184 (2013) ....................................................................... 22

*Beck-Ellman v. Kaz USA, Inc.,*
    No. 10-cv-02134, 2013 WL 1748729 (S.D. Cal. Jan. 7, 2013) ............. 12

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,*
    917 F.2d 1171 (9th Cir. 1990) ........................................................... 20

*Churchill Village, LLC v. General Electric,*
    361 F.3d 566 (9th Cir. 2004) ............................................................. 15

*Class Plaintiffs v. Seattle,*
    995 F.2d 1268 (9th Cir. 1992) ........................................................... 11

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    133 S. Ct. 2179 (2011) ....................................................................... 22

*Gribble v. Cool Transports,*
    No. CV 06-04863, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ......... 17

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...................................................... 20, 21

*In re Connecticut General Life Ins. Co.,*
    No. MDL 1136, CV 95-3566, 1997 WL 910387 (C.D. Cal. Feb. 13, 1997) ......... 18

*In re Employee Benefit Plans Secs. Litig.,*
    No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ................... 14

*In re Prudential Ins. Co. of Am. Sales Practice Litig.,*
    962 F. Supp. 450 (D.N.J. 1997) ......................................................... 24

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999)......................................................... 13

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................... 2, 13

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)......................................................... 11

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*,
    244 F.3d 1152 (9th Cir. 2001)......................................................... 23

*Mullane v. Central Hanover Trust*,
    339 U.S. 306 (1950) ...................................................................... 25

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 14

*Negrete v. Allianz Life Ins. Co. of North America*,
    238 F.R.D. 482 (C.D. Cal. 2006) ................................................... 24

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................... 23

*Ramirez v. Trans Union, LLC*,
    301 F.R.D. 408 (N.D. Cal. 2014) ................................................... 19

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)..................................................... 11, 13

*Safeco Insurance Co. of America v. Burr*,
    551 U.S. 47 (2007) .................................................................. 11, 17

*Tchoboian v. Parking Concepts, Inc.*,
    No. SACV 09-422, 2009 WL 2169883 (C.D. Cal. Jul. 16, 2009) ......................... 23

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)......................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .................................................................. 19

*Westways World Travel, Inc. v. AMC Corp.*,

vi

218 F.R.D. 223 (C.D. Cal. 2003) ............................................................ 24

*Williams v. Gerber*,
    552 F.3d 934 (9th Cir. 2008) .......................................................... 22

*Wolin v. Jaguar Land Rover N. Am.,*
    *LLC,* 617 F.3d 1168 (9th Cir. 2010) ............................................. 23

*Yokayama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ........................................................ 22

*Young v. Polo Retail,*
    No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) .................. 13

## STATUTES

15 U.S.C. § 1681e(b) .................................................................. 1, 15, 18, 20

15 U.S.C. § 1681n(a)(1)(A) ........................................................... 15

15 U.S.C. §§ 1681n ................................................................... 15, 16

28 U.S.C. § 1715 ......................................................................... 6

## RULES

Fed. R. Civ. P. 23(b)(3) ...................................................... 21, 22, 23, 25

Fed. R. Civ. P. 23(c)(2)(B) .......................................................... 25, 26

Fed. R. Civ. P. 23(e)(1)(A) .............................................................. 11

Rule 23(a)(1) .............................................................................. 18

Rule 23(a)(2) ........................................................................ 18, 19

Rule 23(a)(3) .............................................................................. 19

Rule 23(a)(4) .............................................................................. 20

Rule 23(c)(3) .............................................................................. 26

Rule 23(f) ................................................................................. 17

## <u>OTHER AUTHORITIES</u>

Herbert B. Newberg & Alba Conte, Newberg On Class Actions § 11.41 (4th ed. 2002) 11, 12, 13, 14

Manual For Complex Litigation (Fourth) § 21.63 (2004)................................................. 1

### MEMORANDUM OF LAW

## I.   INTRODUCTION

Plaintiff Anam Abbas brought this consumer protection class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA").  As set forth in detail in Ms. Abbas's Complaint (Doc. 1), this is a consumer class action brought on behalf of consumers against a company that sells background information for use in investigating applicants for banking products, and applicants for employment and promotion in the financial services industry.

Among other things, Defendant Early Warning Services, LLC ("EWS") sells "Internal Fraud Prevention Service" ("Internal Fraud" or "IFPS") warnings included in background reports to resellers of consumer information, to potential employers, and in reports to financial institutions. The Complaint asserts that these Internal Fraud warnings are not compiled and placed on reports relating to individual consumers using procedures that assure the maximum possible accuracy of the information reported, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b).  Doc. 1 at ¶¶ 48-55.

By this motion, Plaintiff hereby commences the court approval process outlined in the Manual For Complex Litigation (Fourth) § 21.63 (2004) (hereinafter "Manual") for the settlement of class actions.  Plaintiff and her counsel respectfully request that the Court enter an order: (1) granting preliminary approval of the proposed Settlement Agreement

1

attached hereto as Appendix I;[1] (2) certifying a Class as defined herein for settlement purposes; (3) approving the Parties' proposed notice program and form of notice; (4) directing that notice of the proposed Settlement be given to the Class; and (5) setting a final approval hearing to determine whether the proposed Settlement is fair, reasonable and adequate and whether an order awarding attorneys' fees, reimbursement of expenses and service award should be approved.

As set forth below, the proposed settlement is well "within the range of possible approval," such that the Court should grant preliminary approval, authorize notice to the Class, and schedule a final approval hearing. *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Before engaging in settlement negotiations, Plaintiff conducted a substantial amount of discovery and understood the strengths, weaknesses and risks of proceeding through to class certification and trial. The settlement discussions were always at arm's length, and both parties are represented by counsel experienced in class action litigation under the Fair Credit Reporting Act ("FCRA") and believe the settlement is more than fair, reasonable and adequate. Accordingly, Plaintiff respectfully requests that the Court grant this motion.

## II.   **PROCEDURAL HISTORY**

On October 2, 2015, Plaintiff filed a Complaint in the United States District Court for the District of Arizona on behalf of two putative classes of consumers. First, Plaintiff sought to represent all natural persons in the United States about whom EWS published or

---

[1]   Unless otherwise defined herein, all capitalized terms herein have the same meaning as in the Settlement Agreement.

2

caused to be published a consumer report for employment purposes which included an Internal Fraud warning that was later removed from the EWS system. Doc. 1 at ¶ 42(a). Plaintiff also brought claim on behalf of consumers nationwide who received a letter substantially similar in form to the one she received, notifying her that the Internal Fraud warning EWS had published about her had been removed from the system.  Doc. 1 at ¶ 42(b) and Exhibit A thereto.

The parties conducted extensive written discovery, including the exchange of policy and procedure documents regarding EWS's practices for including Internal Fraud warnings on reports, the sizes of the proposed classes, and the experience of Plaintiff.  Following this discovery, the parties agreed that they had sufficient information to discuss settlement of this matter.  The parties' detailed settlement negotiations spanned several weeks, and they reached a successful agreement in principle in July 2016. Documenting a settlement agreement and collateral documents took an additional six weeks for drafting and exchange of drafts, as well as a series of telephone negotiations concerning the details of the terms and conditions of the agreement.  The Parties eventually finalized their agreement as of September 16, 2016, resulting in the settlement document attached hereto as Appendix I.

## III.   THE PROPOSED SETTLEMENT

### A.   The Settlement Class

Under the Settlement Agreement, the Parties agreed to resolve the claims of the Class of persons defined as follows (the "Class"):

> All natural persons residing in the United States, any U.S. territory, the District of Columbia, or Puerto Rico who were the subject of one or more consumer reports prepared by EWS for employment purposes during the

period from October 2, 2013 to July 1, 2016, which report or reports contained at least one IFPS record that was, following the date it was reported, removed from the EWS IFPS database as a result of either (1) a consumer's dispute of that IFPS record and EWS's subsequent reinvestigation or (2) voluntary deletion by the contributor of that IFPS record not as the result of a termination of the IFPS service. Excluded from the Settlement Class Members are any Released Party, any consumer who has previously released his or her claims against EWS, and the Judge overseeing the Litigation.

App. I at Art. 2(cc). The Settlement Class consists of 83 persons according to data gathered from EWS's records. *Id.* at Sec. 5.1.

For settlement purposes, Plaintiff Abbas is to be appointed as the Class Representative on behalf of the Class Members, and undersigned Plaintiff's counsel are to be appointed as Class Counsel for the Class Members. *Id.* at Art. 4 Sec. 4.1(e)-(f).

### B.   The Consideration Provided To The Class Under The Settlement Agreement

The Settlement Agreement requires EWS to establish a Settlement Fund in an amount sufficient to fund the distributions of both automatic payments to all class members, as well as a pro rata distribution to class members claiming additional damages. *Id.* at Art. 8 Sec. 8.1.1. Each Settlement Class Member is entitled to an automatic FCRA statutory damages payment of $900, without the need to submit a claim. *Id.* at Sec. 8.6.1, 8.8. Each Settlement Class Member who does not opt out and whose mailed notice is not returned as undeliverable will receive this automatic payment. *Id.*

Additionally, Settlement Class Members who believe they have a claim for additional actual damages as a result of the inclusion of an Internal Fraud warning on a consumer report are entitled to submit a claim under the process discussed in Section III.G.,

4

below, for an additional *pro rata* share of the Settlement Agreement.  *Id.* at Sec. 8.6.2, 8.9. Each Settlement Class Member whose claim for actual damages is accepted is entitled to a *pro rata* share of the Settlement Fund after the distribution of the $900 automatic payment, and any additional transfers to the fund by EWS necessary under Section 8.1.1 of the Settlement Agreement.  Payments to Actual Damages Class Members shall be a minimum of $3,500, up to a maximum of $7,500 per claiming Settlement Class Member depending on the number of successful claims.  *Id.* at Sec. 8.1.1, 8.6.2.

From the Settlement Fund, the Parties have agreed that payments will be made as follows:

(a) Within ten (10) days after the Effective Date:

(i) a check to each Settlement Class Member in the amount of $900 (App. I, Sec. 8.8);

(ii) the sum of six thousand dollars ($6,000.00) as an individual settlement and service award to the Class Representative, subject to the approval of the Court (App. I, Sec. 8.4.4);

(iii) the Plaintiff's reasonable attorneys' fees and expenses in the amount of $90,000, subject to the approval of the Court (App. I, Sec. 8.3.4);

(b) 120 days after the mailing of automatic payments, payments to Actual Damages Class Members whose claims were accepted.  App. I, Sec. 8.9.

The Agreement provides that there will be no reversion of any funds to the Defendant under any circumstances.  *Id.* at Sec. 8.10.  In addition to the payments described above, EWS will pay all costs of notice and administration separately from its funding of

the Settlement Fund.  *Id.* at Sec. 4.2.

The amount represented by checks payable to Class Members that are not negotiated or that are returned and remain undeliverable after the ninety (90) day period shall be applied to a *cy pres* fund created that includes any residue of the Settlement Fund remaining for any reason.  *Id.*  The *cy pres* fund shall be donated to the Arizona chapter of Junior Achievement, subject to court approval.  *Id.*

## C.  **The Release**

In exchange for the payments described in Section III.C. above, Settlement Class Members will release all claims which were or could have been asserted in the Litigation. App. I, Sec. 9.1.

## D.  **The Required Class Action Fairness Act Notice**

Defendants will cause notice of the proposed settlement to be served under the Class Action Fairness Act of 2005 ("CAFA").  28 U.S.C. § 1715.  The CAFA Notice will be sent within ten days after the filing of the Settlement Agreement with the Court, and Defendant shall file a certificate of such service with the Court.  To account for the deadlines under governing law, the Parties request that the Final Approval Hearing be scheduled no earlier than 125 days from the date that this Motion is granted.

## E.  **Notice And Settlement Administration**

The Parties have hired the firm of RSM US, LLC as Settlement Administrator.  App. I. at Art. 2(z).  The Settlement Administrator will certify the number and identity of the Class Members under the Class definition, and compile a final Class Member list.  To assist in this process, Defendant shall provide, within ten (10) business days after entry of the

Preliminary Approval Order, a Class Member list to the Settlement Administrator.  *Id.* at Sec. 5.1.  For each Class Member, Defendant shall attempt to provide both the name and last known address.  In preparing the Class Member List, Defendant shall use reasonable, good faith efforts to identify Class Members.

Within thirty (30) days after the Court enters the Preliminary Approval Order, the Settlement Administrator will send the Mail Notice (App. I, Ex. C) to each Settlement Class Member at their last known address.  App. I, Sec. 5.3.1.  For any Mail Notice returned to the Settlement Administrator with a forwarding address, the Settlement Administrator shall re-mail the Mail Notice to the provided forwarding address within five days of receiving any such returned Mail Notice.  *Id.*

No later than three (3) days prior to sending the Mail Notice, the Settlement Administrator shall establish and staff a toll-free telephone number to answer questions from Settlement Class Members, including live support and a monitored voicemail box. *Id.* at Sec. 5.3.2.

No later than five business days after the deadline for submission of opt-out requests and objections, the Settlement Administrator shall serve on the Parties' counsel a list of all persons who have timely opted out of the Class and who have timely objected to the settlement by submitting such opt out requests and such objections postmarked no later than 45 days after the date of mailing the Notice, as compiled by the Settlement Administrator.  App. I, Sec. 5.3.1, 6.1, 6.2, 6.4.1.

F.     **Actual Damages Claim Process**

Settlement Class Members wishing to make a claim must submit a Claim Form

(App. I, Exhibit D) to the Settlement Administrator no later than 75 days after the mailing of the class notice. *Id.* at Sec. 8.5. The Claim Form requires the Settlement Class Member to:

(a) provide the Settlement Class Member's name, current physical mailing address, current telephone number, date of birth, and the last four digits of their Social Security Number or Alien Registration number;

(b) attest that the Settlement Class Member applied for employment on or before the date on which EWS provided an IFPS report about the Settlement Class Member to an employer or prospective employer;

(c) attest that the information that EWS reported was inaccurate and that the Settlement Class Member was out of work for a period of time following the date of the IFPS report;

(d) identify by name the employer that is the subject of the foregoing two attestations;

(e) affirm under penalty of perjury that the attestations made and information provided in the Claim Form are true and correct.

*Id.* at Sec. 8.5.2; App. I, Ex. D.

Any Class Members requiring assistance in making a claim may contact Class Counsel. *Id.* at Sec. 8.5.1. The Settlement Administrator will forward all claims to EWS within five days of receipt, and EWS will verify that it previously supplied a consumer report regarding the claimant to the employer named on the Claim Form. *Id.* at Sec. 8.5.3. If any claims are rejected, the Settlement Class Member may challenge the rejection within 20 days of receiving notice of the rejection. *Id.* at Sec. 8.5.4. Settlement Class Counsel and counsel for EWS will jointly review the rejected claim and may override rejections if they agree. *Id.* The rejection of any Claim Form will not affect the claiming Settlement Class Member's ability to receive the automatic payment described in Section 8.6.1 of the Settlement Agreement. *Id.*

### G.   Attorneys' Fees And Expenses; Service Award

The Settlement Agreement provides that, upon motion filed at least twenty days prior to the Final Approval Hearing, Class Counsel shall request approval of their reasonable attorneys' fees and costs in an amount not to exceed $90,000, subject to the approval of the Court, to which request Defendant will not object.  App. I, Sec. 8.3.1 Plaintiff will also apply for an individual settlement and service award for the Class Representative for her efforts in prosecuting this case including retaining counsel, assisting in discovery, and keeping abreast of the litigation.  Defendant has agreed not to oppose the application for the award, which will be sought in the amount of $6,000, also subject to the approval of the Court.  *Id.*, Sec. 8.4.1.

### H.   *Cy pres* Award

To the extent there are funds remaining in the Settlement Fund after all checks have been mailed to Class Members who did not opt-out of the settlement and the time period to cash all distributed settlement checks has expired, then any remaining Settlement Funds of any type shall be distributed to the Arizona chapter of Junior Achievement as a *cy pres* beneficiary, subject to Court approval.  Junior Achievement of Arizona works with schools and local organizations to educate young people about free enterprise, business and economics, encourage the values of education, foster positive attitudes toward work, and create a bridge between the classroom and workplace through partnerships with local business.  *See* http://www.jaaz.org/what-we-do/.

### I.   Exclusions And Objections

Under the Settlement Agreement, any Class Member who desires to be excluded

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

from the Class must send a written request for exclusion to the Settlement Administrator no later than forty-five (45) days after the Mail Notice is sent.  App. I, Sec. 6.1.

Likewise, any Class Member who has not previously opted-out may appear at the Final Approval Hearing to argue that the proposed settlement should not be approved and/or to oppose the application of Class Counsel for an award of attorneys' fees and costs and the service award to Plaintiff; provided, however, that no individual within the Class shall be heard, and no objection may be considered, unless the individual files with this Court, and serves upon Class Counsel and Defense Counsel, his or her written objection no later than forty-five (45) days after the Mail Notice is mailed.  App. I., Sec. 6.4.1.  All objections must include: (a) the objecting Settlement Class Member's name, address, and telephone number; (b) the name of this Litigation and the case number; (c) a statement of each objection; and (d) a written statement detailing the specific basis for each objection, including any legal and factual support that the objecting Settlement Class Member wishes to bring to the Court's attention and any evidence the objecting Settlement Class Member wishes to introduce in support of the objection.  *Id.* at Sec. 6.4.2.

Any Settlement Class Member who submits an objection through an attorney must additionally contain:  (a) the identity and number of the Settlement Class Members represented by objector's counsel; (b) the number of such represented Settlement Class Members who have opted out of the Class; and (c) the number of such represented Settlement Class Members who have remained in the Settlement Class and have not objected.  *Id.* at 6.4.3.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    The Settlement Approval Process

The Ninth Circuit has a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992)); *see also* Herbert B. Newberg & Alba Conte, Newberg On Class Actions § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise."). There is an "overriding public interest in settling and quieting litigation," *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976), and the Ninth Circuit "has long deferred to the private consensual decision of the parties" to settle, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) *vacated on other grounds* 688 F.3d 645.

Where, as here, the parties propose to resolve the claims of a class through settlement, they must obtain the court's approval.  *See* Fed. R. Civ. P. 23(e)(1)(A). The typical process for approving class action settlements is described in the Manual at §§ 21.632-.635 and is comprised of three steps:

(1)  Preliminary approval of the proposed settlement at an informal hearing;

(2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)  A "final fairness hearing," or final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning

the fairness, adequacy, and reasonableness of the settlement is presented. *Id.* at §§ 21.632-.635.

This procedure, commonly employed by federal courts, serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of class members' interests. *See* Newberg § 11.25.

Plaintiff asks that the Court grant preliminary approval of the proposed settlement. At this stage, the Court "must make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms and must direct preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual § 21.632. Courts should grant preliminary approval and direct notice to the class if the settlement has no obvious deficiencies and "falls within the range of possible judicial approval." *Beck-Ellman v. Kaz USA, Inc.,* No. 10-cv-02134, 2013 WL 1748729, at *5 (S.D. Cal. Jan. 7, 2013); *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 666 (E.D. Cal. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079; Newberg, *supra*, § 11.25.

## B. <u>Preliminary Approval</u>

A proposed class action settlement is fair and should be preliminarily approved if the Court finds that: (1) the negotiations leading to the proposed settlement occurred at arm's length; (2) there was sufficient discovery in the litigation for the plaintiff to make an informed judgment on the merits of the claims; and (3) the proponents of the settlement are experienced in similar litigation. *Young v. Polo Retail,* No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006); *see also Rodriguez*, 563 F.3d at 965, ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated

resolution."); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) ("a 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery'") (quoting Manual § 30.42 (3d ed.1995)); Newberg, *supra*, § 11.41. The settlement easily satisfies these requirements.

### 1.    The Settlement Negotiations Were At Arm's Length

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval." Newberg, *supra*, §11.41; *see also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (great weight given to the recommendation of counsel who are the most closely acquainted with the facts of the litigation); *In re Employee Benefit Plans Secs. Litig.*, No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (same).

There is no doubt that the proposed settlement was reached through arm's length bargaining.  From the beginning of the case, the Parties engaged in extensive, adversarial discovery.  With sufficient information to make the process meaningful, the Parties engaged in settlement discussions, armed with discovery and well-researched and thought-out assessment of the likelihood of success at certification and the merits.  After lengthy and complicated negotiations, the Parties eventually reached a class settlement agreement in principle.  The Parties then proceeded to document the settlement and draft the collateral documents, ultimately resulting in the formal settlement attached hereto as Appendix I.

### 2. Plaintiff's Counsel Had Appropriate Discovery to Make an Informed Judgment on the Merits of the Claims

As described above, before engaging in settlement negotiations, Plaintiff's counsel undertook substantial factual discovery regarding class certification, liability and damages. Plaintiff's counsel reviewed many pages of documents and undertook a significant amount of informal factual discovery and research. Counsel analyzed all this information in light of relevant rulings by Arizona District Courts, the Ninth Circuit, and FCRA litigation from across the country. Accordingly, counsel made informed decisions when negotiating the proposed settlement.

### 3. Counsel For Both Parties, Who Are Highly Experienced in Class Action Procedure and the Claims at Issue in the Case, Believe the Settlement is Fair, Reasonable and Adequate

In negotiating the proposed settlement, Plaintiff had the benefit of highly skilled and experienced counsel. Plaintiff's counsel have broad experience litigating and trying consumer and class action cases on behalf of plaintiffs. Counsel for EWS likewise have extensive experience in this area. In their view, the settlement provides substantial benefits to the Settlement Class, especially when one considers the attendant expense, risks, delays, and uncertainties of litigation, trial and post-trial proceedings.

### 4. The Risks of Litigation Support Approval

The settlement provides all of the significant benefits described above to the Class without the risks, costs, and delays inherent in continued litigation, trial, and appeal of Plaintiff's claims. The expense, complexity, and duration of litigation are important factors considered in evaluating the reasonableness of a settlement. *Churchill Village, LLC v.*

*General Electric*, 361 F.3d 566, 577 (9th Cir. 2004). Litigating this class action through trial would be time-consuming and expensive. As with most class actions, the claims at issue are complex and risky.

Class certification always poses a risk and can often involve an expensive and prolonged battle of the experts in connection with certification, merits and damages issues. If Plaintiff was unable to certify a class, the case would effectively be over, and the Class would gain nothing from continued litigation. Assuming Plaintiff prevailed at class certification, proving liability on the merits would require further risky litigation and additional expert work. Even if Plaintiff successfully passed the certification and liability hurdles, a battle would likely ensue concerning whether Plaintiff and other Class Members have sustained damages and, if so, the proper measure of those damages, requiring yet more expert testimony and entailing further risks to Plaintiff's and the Class's chances of recovery. Although Plaintiff is and remains confident in the strength of her case and is prepared to litigate it through trial at all times, the risks were numerous and real.

By contrast, the settlement provides significant cash benefits to the Class in the form of FCRA statutory and actual damages.  Under the FCRA, a prevailing plaintiff in a class action may obtain, inter alia, actual damages and between $100 and $1,000 in statutory damages for each member of a class.  15 U.S.C. § 1681n(a)(1)(A).  At this stage of litigation, the automatic check in the amount of $900 per Class Member (without having to file a claim or take any other action) represents a substantial benefit to the Settlement Class.  Additional funds, up to $7,500 per claiming Settlement Class Member, are made available under the Settlement Agreement to Settlement Class Members also seeking actual

damages through a streamlined claims process.

While Plaintiff's counsel firmly believes in the merits of Plaintiff's section 1681e(b) claim, demonstrating liability on FCRA claims is not at all a certainty.  Liability under the FCRA is not strict and only arises upon a finding of negligence or willful failure to comply.  15 U.S.C. §§ 1681n and 1681o.  Defendant contests liability in all regards.  Further, unless there is a finding of willful noncompliance,[2] Plaintiff (and thus the Class) must establish actual damages.  Consequently, absent approval of the settlement, Plaintiff will be put to challenging proofs, including as to issues of willfulness, and both Parties face the prospect of a long and expensive litigation which will likely culminate in a trial on a class-wide basis and, thereafter, a lengthy appeal (not to mention the likelihood of a requested interlocutory appeal relating to class certification under Rule 23(f)).

## V.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The use of settlement classes is common and proper in the resolution of class action lawsuits. *See, e.g., Gribble v. Cool Transports,* No. CV 06-04863, 2008 WL 5281665, at *3 (C.D. Cal. Dec. 15, 2008) (certifying class for settlement purposes only); *In re Connecticut General Life Ins. Co.,* No. MDL 1136, CV 95-3566, 1997 WL 910387, at *1

---

[2]    In *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007), the Supreme Court considered the standard for whether a defendant "willfully" violates the FCRA, including whether willfulness also includes "recklessness." *Id.* at 52. While it held that the former encompassed the latter, the Court also concluded that this willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.  To overcome this hurdle, it is the plaintiff's burden to prove that a defendant's attempts to comply with the FCRA were "objectively unreasonable." *Id.*

(C.D. Cal. Feb. 13, 1997) (certifying for the purposes of settlement, the settlement class defined in the settlement agreement).

Here, the Class is defined as:

> All natural persons residing in the United States, any U.S. territory, the District of Columbia, or Puerto Rico who were the subject of one or more consumer reports prepared by EWS for employment purposes during the period from October 2, 2013 to July 1, 2016, which report or reports contained at least one IFPS record that was, following the date it was reported, removed from the EWS IFPS database as a result of either (1) a consumer's dispute of that IFPS record and EWS's subsequent reinvestigation or (2) voluntary deletion by the contributor of that IFPS record not as the result of a termination of the IFPS service. Excluded from the Settlement Class Members are any Released Party, any consumer who has previously released his or her claims against EWS, and the Judge overseeing the Litigation.

App. I at Art. 2(cc). The settlement sets forth an identifiable class. Because it meets all the requirements of Rule 23, it should be certified for settlement purposes.

### A.    The Class Satisfies The Numerosity Requirement

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Numerosity is undisputed. The Parties understand and agree that approximately 83 individuals fit the class definition set forth above. This number satisfies the numerosity requirement.

### B.    The Class Satisfies The Commonality Requirement

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). This means that the class members' claims "must depend on a common contention . . . of such

a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* This requirement is also satisfied.

The commonality requirement is met for the Class because the claims of all Class Members arise from the same contentions, namely, that EWS does not maintain reasonable procedures to assure that the Internal Fraud warnings that it includes on consumer reports that it prepares and sells for employment purposes are accurate.  The procedures used to prepare these reports are the same for all class members.  Thus, the determination of whether the Defendant's practice violates section 1681e(b) of the FCRA will resolve a central issue on a class-wide basis in "one stroke."  *See, e.g. Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 418-19 (N.D. Cal. 2014) (whether uniform procedure for including adverse information on a consumer report assures maximum possible accuracy is an overarching common question which satisfies Rule 23(a)(2)).

C.    **The Plaintiff Meets The Typicality Requirement**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  This requirement is also satisfied. Courts consistently find that the typicality requirement is met if the claims arise from a common course of conduct. Typicality does not require the claims to be substantially identical. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Rather, the Ninth Circuit has found typicality if the requisite claims "'share a common issue of law or fact' . . . and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1175 (9th Cir.

1990) (citations omitted), amended, 937 F.2d 465 (9th Cir. 1991).

Plaintiff, like other Class Members, was the subject of a consumer report prepared by EWS which contained an Internal Fraud warning which was later removed, because she disputed to EWS that the information could not be verified as accurate. Because Plaintiff is a member of the proposed Class, and asserts statutory violation claims on behalf of herself and all absent Class Members based upon Defendant's uniform conduct, practice and procedures, her claims are typical.

### D.   The Plaintiff Satisfies The Adequacy Requirement

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020. There are no conflicts of interest alleged or that could possibly exist here.  Plaintiff seeks the exact same remedy as all Settlement Class Members: namely, statutory and actual damages stemming from EWS's reporting of inaccurate information. Plaintiff's interests, therefore, are perfectly aligned with the interests of the Class.

The adequacy of Plaintiff and her counsel is evidenced by the settlement negotiated with Defendant, which provides for significant relief to the Class. Further, counsel for Plaintiff are highly experienced in class action litigation, and have been involved in many class action settlements and actions which further demonstrates their adequacy, and weights in favor of preliminary approval of the settlement.

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E.  <u>The Class Satisfies The Criteria Of Rule 23(b)</u>**

To certify a class under Rule 23(b)(3), this Court must find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).  Both criteria are met in this case. The primary purpose behind Rule 23(b)(3) is the vindication of the rights of people who would not have the economic power or incentive to bring a wrongdoer into court to redress a wrong imposed on them.

### 1.  <u>Common Questions Predominate</u>

The predominance inquiry considers whether "questions of law or fact common to the class will predominate over any questions affecting only individual members as the litigation progresses." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds,* 133 S. Ct. 1184, 1195 (2013). This analysis starts with the underlying causes of action. *Erica P. John Fund, Inc. v. Halliburton Co.,* 133 S. Ct. 2179, 2184 (2011).

Plaintiff's claims here center on the question whether Defendant's practices for including Internal Fraud warnings on consumer reports for employment purposes assured the maximum possible accuracy of those reports, as required by FCRA section 1681e(b). Appropriately, the focus is on the defendant's conduct, not the plaintiff's. *Williams v. Gerber*, 552 F.3d 934, 938 (9th Cir. 2008); *Yokayama v. Midland Nat'l Life Ins. Co*., 594 F.3d 1087, 1089, 1094 (9th Cir. 2010). Given the objective standard and focus on Defendant's conduct, common questions of law and fact predominate.

### 2. A Class Action Is The Superior Method For The Fair And Efficient Adjudication Of This Controversy

This case also meets the second requirement of Rule 23(b)(3): that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy."   To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for courts to consider:

> (A) [T]he interest of members of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).  Each of these factors counsels in favor of certifying the Class.

### 3. The Individual Class Members' Interest In Controlling The Litigation

First, there is little interest or incentive for Class Members to individually control the prosecution of separate actions. Each Class Member's individual claim is small to in comparison to the potential litigation costs that would be incurred by prosecuting these claims individually.  *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175–76 (9th Cir. 2010).  Although the injury resulting from EWS's inaccurate reporting may be substantial, the cost of individually litigating such a case against EWS could easily exceed the value of any relief that could be obtained by any one consumer.  This factor alone warrants a finding that a class action is a superior method of adjudication.  *See Tchoboian v. Parking*

*Concepts, Inc.*, No. SACV 09-422, 2009 WL 2169883, at *7 (C.D. Cal. Jul. 16, 2009). Furthermore, Settlement Class Members can receive the substantial benefits of the settlement by completing a simple claim form, or even by taking no action at all. Because the claims of each Class Member in this case are virtually identical, no one member of the Class would have a materially greater interest in controlling the litigation. *See Westways World Travel, Inc. v. AMC Corp.*, 218 F.R.D. 223, 240 (C.D. Cal. 2003).

### 4.      Extent And Nature Of Litigation Already Commenced By Class Members

Plaintiff is unaware of any other actions by Class Members against Defendant asserting the same claims as here.  This factor also militates in favor of certification.

### 5.      The Desirability Of Concentrating The Litigation In A Particular Forum

Certification is also superior because concentrating this litigation in one forum would not only prevent the risk of inconsistent outcomes but would also "reduce litigation costs and promote greater efficiency."  *Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482, 493 (C.D. Cal. 2006).  This "factor emphasizes the desirability of the forum selected, not the desirability of claims concentration generally." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450, 524 (D.N.J. 1997). The District of Arizona is a compelling forum for this action as Defendant's conduct emanated from this District.

### 6.      This Case Is Manageable As A Class Action

Finally, the question here is "whether reasonably foreseeable difficulties render some other method of adjudication superior to class certification."  *Id. a*t 525. As the

22

Supreme Court has held, manageability issues will not foreclose certification for settlement purposes. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3) (D), for the proposal is that there be no trial."). Therefore, there are no serious manageability difficulties presented by conditionally certifying this case for settlement purposes, such as choice of law issues.  As this case will not go to trial if finally approved, all that would remain is settlement administration if the settlement is granted final approval. Hence, Plaintiff has satisfied the requirements of Rule 23(b)(3).

## VI.    THE PROPOSED CLASS NOTICE IS CONSTITUTIONALLY SOUND

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Central Hanover Trust,* 339 U.S. 306, 314 (1950).  Notice also must satisfy Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state the following in plain, easily understood language:

> (i) the nature of the action;  (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; and (vi) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, the Notice is written in easy and plain language and contains the information required by Rule 23(c)(2)(B). App. I,  Exhibit C.  Accordingly, the form of notice and plan of dissemination should be approved.

23

VII.   **PROPOSED SCHEDULE**

Plaintiff proposes, and the Settlement Agreement contemplates, the following schedule for the approval process.  If the Court grants preliminary approval, these time frames and deadlines will be triggered by the entry of the accompanying [Proposed] Order Preliminarily Approving Class Action Settlement and Directing Notice to the Class.

| Event | Date |
| --- | --- |
| Entry of Preliminary Approval Order | Day 0 |
| EWS shall provide Class List to the Settlement Administrator | Day 10 |
| Telephone assistance program activated | Day 27 |
| Mail Notice sent | Day 30 |
| Deadline for Settlement Class Members to submit objections to the proposed settlement or requests for exclusion | Day 75 |
| Settlement Administrator to submit opt-out requests | Day 80 |
| Class Counsel to file Motion for Final Approval of Class Action Settlement, and for Award of Attorneys' Fees and Service Payment | Day 90 |
| Deadline for Settlement Class Members to submit Claim Forms seeking actual damages payments | Day 105 |
| Final Fairness hearing and last day for class members to challenge rejections of Claim Forms | Day 125 |

24

**VIII.  <u>CONCLUSION</u>**

The settlement is an excellent result considering the nature of the litigation and the negotiation process. Each Class Member is entitled to a substantial cash recovery without the need to take any action as a result of the settlement, regardless of whether they were aware that Defendant's conduct potentially violated the FCRA, and may be entitled to additional recovery through the submission of a simple claim form. The terms of the settlement, as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the strictures for preliminary approval.

WHEREFORE, Plaintiff requests that the Court enter an Order, substantially similar to the Proposed Preliminary Approval Order filed concurrently with this Motion, that: (1) grants preliminary approval to the proposed settlement; (2) approves of the proposed Notice filed concurrently with this Motion; (3) orders that the proposed Notice be mailed to Class Members in accordance with the Agreement; (4) approves the appointment of the Settlement Administrator; and, (5) sets the date of the Final Approval Hearing at the Court's earliest availability, but no sooner than 125 days from the date of the granting of this Motion.

Respectfully submitted,

                                        **Francis & Mailman, P.C.**

DATE:  September 16, 2016                */s/ John Soumilas*
                                        James A. Francis (*pro hac vice*)
                                        John soumilas (*pro hac vice*)
                                        100 South Broad Street, Suite 1902
                                        Philadelphia, PA 19110
                                        T: 215.735.8600

jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

Paul B. Mengedoth
**Mengedoth Law PLLC**
20909 N. 90th Place, Suite 211
Scottsdale, AZ 85255
T. 480.778.9100
paul@mengedothlaw.com

*Counsel for Plaintiff Anam Abbas and the
proposed Settlement Class*